IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:20-CR-0003-REP |
| | ) | |
| QUOTEZ TYVICK PAIR, | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF THE UNITED STATES
WITH RESPECT TO DEFENDANT'S SENTENCING FACTORS

The United States of America, by and through its attorneys, Raj Parekh, Acting United States Attorney for the Eastern District of Virginia, and Olivia L. Norman, Assistant United States Attorney, hereby submits its position with respect to defendant's sentencing factors.

I.   Objections

The government objects that the probation officer did not include a 2-point enhancement for directing the use of violence pursuant to U.S.S.G. § 2D1.1(b)(2) or a 2-point enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. Attempts have been made on behalf of the defendant to intimidate a government witness. Because of the intimidation, the government was not able to charge the defendant with crimes that this government witness witnessed the defendant commit. In August 2020, not long after the discovery in this case was provided to the defendant himself, the home of the government witness's significant other ("SO") was shot up several times. On August 14, 2020, shots were fired at SO's home. The police found a bullet had broken a window of the home and the bullet was still lodged in the frame. On August 21, 2020, that house was shot at again. On August 22, 2020, the residence was shot up again, with a bullet shattering the window of the SO's child's bedroom. Most recently, on April 1, 2021, a

1

male unknown to the SO flagged her down and told her that the government witness's "name is on paperwork." When SO asked what he meant, the male said "He's too high up in the food chain for you to get hurt." The SO believes the man was talking about the defendant. When the SO asked the man where the paperwork was, the man said she needed to go talk to Quotez at Pamunkey and he would provide the paperwork.

It is well established that the defendant is a member of the Bloods gang. PSR p2. Defendant bears numerous gang tattoos, including the 5-point start which is a symbol of the United Blood Nation ("UBN"), in which each point of the star represents the five points of knowledge within the UBN: life, love, loyalty, obedience, and respect or sometimes love, truth, justice, freedom and peace. https://www.wsoctv.com/news/local/united-blood-nation-history-terminology-background/523960078.

The Bloods gang was formed in Los Angeles, but quickly expanded across the United States in the 1980s. *Id*. Originally, the Bloods were broken down into individual groups identified or affiliated with a certain street, neighborhood, or area, commonly referred to as "hoods". *Id*. However, in 1993 the UBN was created on the East Coast to unite these individual affiliates against rival prison gangs. *Id*. Each of the groups unified under UBN kept their original names such as "G-shine," Nine Trey Gangsters," etc. *Id*. The gang maintains a strict hierarchy and is governed by a common set of rules known as "The 31." *Id*. Cooperating with law enforcement is strictly prohibited. *Id*. "Inglewood" or "Wood" is a commonly used word by Blood members to described gang knowledge. *Id*.

Tattoos are an important method of identification within the UBN. *Id*. Most common are a five-pointed star the letters "M.O.B." which stands for "Member of Bloods," and tattoos that symbolize a particular hood. *Id*.

2

Defendant has several tattoos that document his Blood membership. *See* Exhibit 1, attached. He has a large 5-point star on the front of his neck, just below his chin. Exhibit 1, p3. On the left side of his neck, defendant has a tattoo that says "Inglewood" "Redd" and "Illtown" surrounded by smaller 5-point stars. As mentioned earlier, "Inglewood" refers to having gang knowledge and "Redd" is a street affiliated with the local Blood gang. Defendant has other gang tattoos, including "OG" which stands for "Original Gangster" and "QSBG" which also refers to the "Blood Gang." Defendant also has a tattoo of two lower case "i". *See* Exhibit 1.

Prior to any of the retaliation mentioned above, the government witness provided that defendant was a "Double I" Blood gang member, who had been recruiting juvenile teenagers in the Mosby area to sell drugs for him, including one related to the witness. The government witness was regularly purchasing 1 to 2 ounces of cocaine from the defendant for nearly five months and was fronted heroin. The government witness described the defendant as the most violent person in Mosby Court and admitted to selling as many as six firearms to the defendant between February and June 2019. The government witness provided that the defendant had several people working for him.

Given defendant's gang affiliation and having people working for him, his knowledge of the identity of the government witness and the whereabouts of the witness's family, and the timing of the shootings (just after the discovery was provided) and the approach to the witness's SO (following defendant's conviction), there is a preponderance of the evidence that the shootings and the subsequent contact with the witness's SO were intended to intimidate the government's witness and thereby obstruct justice.

The government has no further objections or corrections to the Presentence Report or the calculation of the advisory guideline range. Based on defendant's relevant conduct drug weight,

3

the probation officer determined that defendant's base offense level is 30. PSR ¶ 23. The probation officer also correctly determined that the defendant possessed a dangerous weapon and increased the offense level by 2 levels. PSR ¶ 24. The probation officer further determined that the defendant was selling fentanyl as heroin and increased defendant's offense level by 4 additional levels. PSR ¶ 25. Defendant's total offense level is 36. PSR ¶ 32. Defendant has 8 criminal history points, resulting in a Criminal History Category IV  PSR ¶ 47. Defendant's advisory sentencing guideline range is 262 to 327 months (restricted to 240 months on Count One). PSR page 21.

The government submits that a sentence of 300 months (consisting on 240 months on Count One and 300 months on Count Two, to run consecutively) is within the advisory guideline range and would be sufficient but not greater than necessary to meet the goals of sentencing based on the following.

    A. <u>A GUIDELINE SENTENCE IS CONSISTENT WITH THE GOALS OF SENTENCING SET FORTH IN 18 U.S.C. § 3553(a).</u>

When sentencing a defendant a district court must consider the advisory guideline range and other relevant sentencing factors as outlined in 18 U.S.C. § 3553(a)(2005). *See United States v. Hughes,* 401 F.3D 540 (4th Cir. 2005). These factors include the need for the sentence imposed:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training; medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The factors also include "the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

        1.     <u>Seriousness of the Offense</u>

Defendant's drug crimes are extremely serious ones. As established by the cooperators, defendant was selling every type of drugs in and around the public housing area known as Mosby Court. PSR ¶¶ 12-14. Defendant made his crimes even more serious by adding firearms (see attached Exhibit 2) and recruiting youth to sell his product.

Defendant sold 3 ounces of fentanyl to the police cooperator who testified that he was supposed to be buying heroin. Those 3 ounces of fentanyl represented over 8,000 individual dosage units of the highly dangerous illicit fentanyl. Fentanyl is the leading cause of drug overdose death in Virginia. The seriousness of this offense weighs in favor of a significant sentence.

        2.     <u>Need to Deter Future Criminal Conduct</u>

The lure of quick money has led too many people to illegal drug trafficking. The threat of prison did not deter the defendant from dealing drugs. Defendant was on probation at the time of the instant offense after serving time for maliciously shooting into an occupied dwelling and a probation violation following that conviction for, ironically, associating with a known Blood Member in Mosby Court and a new criminal charge. PSR ¶ 42. The new criminal charge was possession of a firearm by a violent felon for which he was sentenced to 5 years in prison. PSR ¶ 44. He was released from custody on August 15, 2018. PSR ¶ 42. He sold fentanyl to the cooperator on October 30, 2019.

Notably, the defendant failed to comply with the rules of the institutions when he was incarcerated. He had 12 disciplinary infractions, including being under the influence of drugs, indecent exposure, aggravated assault on a non-offender, possession or use of unauthorized communication devices, just to name a few. PSR ¶ 44.

The possibility of going to prison did not deter this defendant. The possibility of creating new addicts or overdose deaths did not deter this defendant. Defendant's prior suspended prison sentences and state supervised probation did not deter this defendant. The need to deter this defendant and others similarly situated weighs heavily in favor of a significant sentence.

       3.      <u>Need to Protect the Public from the Defendant's Future Criminal Conduct</u>

Illegal drugs have become a blight on society. The ease of obtaining illegal drugs has contributed to the increasing number of people using and becoming addicted to these dangerous, illegal drugs. The allure of quick money and the trappings of illegal drug trafficking are increasingly tempting more and more people to the illegal trade, in spite of the concerns of prosecution. With every sale of illegal drugs comes the possible creation of a new life-long drug dependency. Every dose of fentanyl distributed carries the risk of overdose and death.

The public will be protected from the defendant's future crimes, at least while he is incarcerated. Defendant's actions prove that when he is not incarcerated (and even when he is), he is committing crimes and putting the public in danger. A significant sentence also may deter the defendant from resuming his illegal drug trafficking activities upon his release, for fear of an equal or greater sentence if ever convicted of a crime again, thereby further protecting the public.

      4.      <u>Need to Provide Needed Treatment to Defendant</u>

Any sentence imposed should include a recommendation for substance abuse treatment and counseling (*see* PSR ¶¶ 87-89), mental health treatment and counseling (PSR ¶ 83) and vocational and educational programs (PSR ¶ 92).

      5.      <u>Need to Avoid Unwarranted Disparities</u>

Defendant's drug trafficking activities and his criminal history do not fall outside of the heartland of drug trafficking cases and defendants. Defendant's advisory guideline range reflects the facts and circumstances of this case, including defendant's prior criminal history, his possession of a dangerous weapon and the dangerousness of the drug he was distributing. A sentence within the advisory guideline range would not result in an unwarranted disparity.

## CONCLUSION

A sentence of 300 months is within the advisory guideline range and would be sufficient but not greater than necessary to achieve the goals of sentencing, as set forth in 18 U.S.C. § 3553(a).

      Respectfully submitted,

      RAJ PAREKH
      ACTING UNITED STATES ATTORNEY

By:   /s/
      Olivia L. Norman
      V.S.B. No. 31418
      Assistant United States Attorney
      Office of the United States Attorney
      919 E. Main Street, Suite 1900
      Richmond, Virginia 23219
      (804) 819-5475
      (804) 771-2316 (facsimile)
      Olivia.Emerson@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on the 6th day of May, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to Counsel of Record.

                                        /s/
                                Olivia L. Norman
                                Assistant United States Attorney
                                Office of the United States Attorney
                                919 E. Main Street, Suite 1900
                                Richmond, Virginia 23219
                                (804) 819-5475
                                (804) 771-2316 (facsimile)
                                Olivia.Emerson@usdoj.gov